UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| REX GUNTHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16-cv-01606-NCC |
| | ) | |
| DR. STACEY NEFF and | ) | |
| DAVID SCHMITT, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss (Doc. 27). The motion is fully briefed and ready for disposition. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. 636(c)(1).[1] For the following reasons, Defendants' Motion will be **GRANTED** and the consolidated action will be **DISMISSED**.

### I. Background

This is a consolidated Section 1983. *Pro se* Plaintiff Rex S. Gunther f/k/a Peter Charles Kroner's ("Plaintiff"), a civilly committed person at the Southeast Missouri Mental Health Center ("SMMHC") in Farmington, Missouri, alleges that Defendants Dr. Stacey Neff ("Dr. Neff") and David Schmitt ("Schmitt") (collectively "Defendants") restricted his ability to send and receive mail. Specifically, Plaintiff alleges that Dr. Neff, "verbally told 'NO' [sic] to the petitioner for sending any mail item to his fiancé . . . or receiving any mail item from her" (Doc. 1 at 1). Plaintiff further asserts that Dr. Neff will also not let him have any phone contact with his fiancé (*Id.*). As to his claims against Dr. Neff, Plaintiff requests various forms of injunctive relief (*Id.* at 2).

---

[1] Doc. 23 in Case No. 4:16-cv-01606-NCC and Doc. 21 in Case No. 4:17-cv-00172-NCC.

Plaintiff also alleges that Schmitt, the Chief Operating Officer at SMMHC, violated Plaintiff's constitutional rights by not allowing Plaintiff to send or receive mail (Doc. 4[2] at 5). In support of his assertion, Plaintiff provides, as an exhibit attached to the Amended Complaint, a memo from Schmitt to Plaintiff dated October 25, 2016 (*Id.* at 7).[3] The Memo reads in its entirety:

> Per our conversation and at your request[,] I am outlining, herein, the reasons for the restriction of your mail.
>
> You have recently made several attempts to forward mail to individuals you are restricted from contact with using third party intermediaries, have attempted to receive items with pictures of children in spite of restrictions on such due to pedophilia, and have attempted to mail large sums of money. These behaviors are interfering with your therapeutic processes. Therefore, your mail will be restricted (except for legitimate legal mail) for 30 days based on RSMO 630.010 subsection 5 at which time the restriction will be reviewed.

(*Id.*). Plaintiff asserts that his mail was restricted from October 25, 2016 to December 19, 2016 (*Id.* at 5). Plaintiff also asserts that Schmitt incorrectly labels him a pedophile as "Plaintiff's lifetime criminal record shows that there never was anything brought before any court of a sexual nature" (*Id.*). In support of this assertion, Plaintiff provides the Court with what appears to be the first page of his Missouri Criminal History (*Id.* at 8). As to Schmitt, Plaintiff requests that Schmitt "be ordered to immediately release all restrictions on the Plaintiff's incoming and outgoing mail; stop all screening of all mail either way and Plaintiff can send outgoing mail any

---

[2] Throughout this opinion, the Court references Plaintiff's Amended Complaint in Case Number 4:17-cv-00172-NCC as document 4. Unless otherwise noted, the remaining referenced documents can be found in the lead case, Case Number 4:16-cv-01606.

[3] "In addressing a motion to dismiss, '[t]he court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record.'" *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (quoting *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010) (citation omitted)); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) ("In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits, ..., and documents incorporated into the complaint by reference ....") (internal citations omitted).

day from Monday to Friday" (*Id.* at 9).  Plaintiff also requests monetary damages in the amount of $1,000,000 (*Id.*).  Plaintiff sues both Dr. Neff and Schmitt as persons and in their professional statuses (*See Id.* at 1).

On June 19, 2017, Defendants moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the consolidated action (Doc. 27).  On June 23, 2017, Plaintiff filed a letter entitled "Update for Current Action" indicating that as of June 20, 2017, his phone and mail restrictions had been altered such that his phone restrictions were removed as were any restrictions on incoming mail but his outgoing mail continues to be screened and censored and he can only send mail out on Tuesdays and Fridays (Doc. 30).  On June 30, 2017, in response to Defendants' Motion to Dismiss, Plaintiff filed a "Reply to Motion to Dismiss" indicating that he "concurs with the dismissal of complaint with Defendant Dr. Stacey Neff . . . [and] concurs with dismissal of partial complaint with Defendant David Schmitt for only those stated in Section (2) [(presumptively Plaintiff's injunctive relief request)]" (Doc. 31 at 1).

Prior to the filing of Plaintiff's response, on June 30, 2017 in light of the letter filed by Plaintiff, the Court directed Plaintiff to file a memorandum no later than fourteen (14) days from the date of the Order either (1) indicating that he wished to dismiss the injunctive relief claims against David Schmitt and the Complaint against Dr. Stacey Neff or (2) stating why his injunctive relief claims against David Schmitt and his Complaint against Dr. Stacey Neff should not be dismissed as moot (Doc. 29).  Plaintiff did not file a memorandum with the Court.  However, on August 14, 2017, Plaintiff filed a letter indicating that he filed his reply with the Court and requesting an update on the status of the case (Doc. 32).  Therefore, as a preliminary matter, the Court will grant Defendants' Motion to Dismiss as to the injunctive claims in this consolidated case.  Accordingly, as Plaintiff only requested injunctive relief of Dr. Stacey Neff,

she will be dismissed. The only issue remaining before the Court is whether Plaintiff's claim for monetary damages against Schmitt properly states a claim upon which relief can be granted.

## II. Legal Standard for a Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Federal Rule of Civil Procedure 12(b)(6) provides for a motion to dismiss based on the "failure to state a claim upon which relief can be granted." To survive a motion to dismiss a complaint must show " 'that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). The pleading standard of Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). All reasonable inferences from the complaint must be drawn in favor of the nonmoving party. *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 1999).

## III. Analysis

### A. Sovereign Immunity

Schmitt first asserts that because Plaintiff has failed to indicate in unambiguous terms

whether he has sued Schmitt in his individual or official capacity, it is presumed that Schmitt is sued only in his official capacity and as such Schmitt is entitled to sovereign immunity under the Eleventh Amendment (Doc. 28 at 4-7). Indeed, absent an express and unambiguous statement in the complaint that a plaintiff is suing a defendant in his or her individual capacity, the Court is to assume that defendant is sued in his or her official capacity only. *Artis v. Francis Howell N. Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998) (finding that if a complaint fails to specifically name a public official in his or her individual capacity, it is presumed he or she is sued only in his official capacity). Here, Plaintiff indicates that he is suing Schmitt "[a]s a person and in his professional status" (Doc. 4 at 1). While the Court is mindful of its duty to liberally construe a *pro se* party's filing, "if a complaint . . . only hints at the capacity in which a state officer is sued for money damages, the complaint should be interpreted as an official-capacity claim ....[;][i]n actions against [officials], specific pleading of individual capacity is required to put public officials on notice that they will be exposed to personal liability." *Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999). *See also Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 620 (8th Cir. 1995) ("Neither a cryptic hint in a plaintiff's complaint nor a statement made in response to a motion to dismiss is sufficient [to establish that a defendant is sued in his or her individual capacity]."). Further, Plaintiff is not unaware of this requirement (*See* Doc. 1, *Gunther v. Gowdy, et al.*, Case No. 4:15CV1851NCC). Therefore, the Court finds that Schmitt is being sued in his official capacity only.

"A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). For this reason, official capacity suits brought against agents or employees of a state, as is the case here, are considered to be actions against the state itself. *Will*

5

*v. Michigan Dept. of State Police,* 491 U.S. 58, 71 (1989) ("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office .... [and][a]s such, it is no different from a suit against the State itself.") (citation omitted). Thus, sovereign immunity also applies against governmental officials sued in their official capacity. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Accordingly, to the extent that Plaintiff is attempting to sue Schmitt for money damages, his official capacity claim is barred by the Eleventh Amendment and must be dismissed. *Andrus*, 197 F.3d at 955 ("[a] claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment"); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69, n. 24 (1997) ("State officers in their official capacities, like States themselves, are not amenable to suit for damages under § 1983").

**B. Qualified Immunity**

Even if the Court were to find that Plaintiff properly sued Schmitt in his individual capacity, Schmitt is entitled to qualified immunity. Qualified immunity shields public officials "from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009). To overcome a defendant's qualified immunity claim, the plaintiff must show that: "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional right; and (2) the right was clearly established at the time of the deprivation." *Baribeau v. City of Minneapolis*, 596 F.3d 465, 474 (8th Cir. 2010) (quotations omitted). "The law is clearly established if it gives the defendant officials 'fair warning' that their conduct violated an individual's rights when the officials acted." *Forrester v. Bass*, 397 F.3d 1047, 1054 (8th Cir. 2005) (citing *Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002)); *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (A right is "clearly

established" if "a reasonable official would understand that what he is doing violates that right"). If a state official violates a clearly established constitutional right, he is not entitled to qualified immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982). To prevail at this stage of the proceeding, Defendant must show that he is entitled to qualified immunity on the face of the complaint. *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005).

"Inmates have a First Amendment right of free speech to send and receive mail." *Hudson v. Palmer*, 468 U.S. 517, 547 (1984). This right, however, is subject to limitations based on the needs of the penal system. *Griffin v. Lombardi*, 946 F.2d 604, 607 (8th Cir. 1991). "Accordingly, prison officials may lawfully censor prison mail that is detrimental to the security, good order and discipline of the institution." *Kaden v. Slykhuis*, 651 F.3d 966, 968 (8th Cir. 2011). In light of this balance, regulations on inmate mail are valid only if they are "reasonably related to a legitimate penological interest." *Turner v. Safley,* 482 U.S. 78, 89 (1987). In *Turner,* the Supreme Court set forth the following four factors to be considered in determining the reasonableness of a prison regulation: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the rights that remain open to the inmates; (3) the impact that accommodation of the asserted constitutional right would have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether any "ready alternatives" exist to the prison regulation. *Id.* at 89-90. *Thornburgh, v. Abbott*, 490 U.S. 401, 407-14 (1989) (limiting *Procunier v. Martinez,* 416 U.S. 396 (1974), to outgoing correspondence and applying reasonableness standard to incoming correspondence from outsiders). *See also Beaulieu v. Ludeman*, 690 F.3d 1017, 1039-41 (8th Cir. 2012) (applying *Turner* factors to analyze restrictions on First Amendment rights of civilly committed persons, whom the court

described as analogous to pretrial detainees).

Plaintiff cannot demonstrate that Schmitt violated a clearly established federal right. Plaintiff does not identify any facility policy or regulation and does not appear to assert the unconstitutionality of any facility policy or regulation. Rather, Plaintiff appears to assert that various unnamed institution policies or regulations were unconstitutionally applied to him when he was restricted from receiving or sending mail from October 25, 2016 to December 19, 2016. However, according to the memo attached to Plaintiff's Amended Complaint, Schmitt restricted Plaintiff's access to the mail for three reasons: (1) attempts to forward mail to restricted individuals using third-party intermediaries; (2) attempts to receive items with pictures of children in spite of restrictions because of pedophilia; and (3) attempts to mail large sums of money (Doc. 4 at 7). While Plaintiff appears to take specific issue with Schmitt's characterization that Plaintiff's mail was restricted, in part, due to "pedophilia" (Doc. 4 at 5), even if the Court were to disregard this reason for the temporary restriction on Plaintiff's incoming and outgoing mail, it finds the remaining two reasons sufficiently establish a valid, rational connection between the temporary restriction and the express governmental interest in supporting Plaintiff's therapeutic process and the implicit governmental interest in maintaining security. *Dawson v. Scurr*, 986 F.2d 257, 260 (8th Cir. 1993) (both security and rehabilitation are legitimate objectives). Further, in light of Plaintiff's use of third party intermediaries to contact individuals with whom he is restricted from contacting, an obvious attempt to avoid the facility's screening procedures, the Court cannot discern a reasonable, ready alternative to the imposed restriction. Regardless, Plaintiff cannot show that a reasonable person, in Schmitt's shoes, would have known that a temporary restriction on Plaintiff's mail, for the above-stated reasons, violated Plaintiff's Frist Amendment right of free speech to send and receive mail.

Therefore, Schmitt must be granted qualified immunity, and this action will be dismissed.

### IV. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. 27) is **GRANTED**. The consolidated action is **DISMISSED, with prejudice**.

A separate Order of Dismissal will accompany this Memorandum and Order.

This Memorandum and Order and the Order of Dismissal shall be filed in the above-captioned case as well as the consolidated case, Case Number 4:17-cv-00172-NCC, and both cases shall be closed.

Dated this 8th day of December, 2017.

    /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE